IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRYAN ANTHONY DOUGLAS,

        Plaintiff,                No. CIV S-09-3412 KJM GGH P

       vs.

B. STEVENS,

        Defendant.             FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's motion for summary judgment, filed on February 24, 2011, to which plaintiff filed an opposition on March 16, 2011, after which defendant Stevens filed a reply on March 21, 2011, re-served on March 30, 2011, at plaintiff's most current address, pursuant to this court's order, filed on March 30, 2011.

Plaintiff's Allegations

        In his complaint, filed on December 8, 2009, plaintiff alleges that on June 6, 2009, plaintiff went to the A-clinic [at Mule Creek State Prison (MCSP)] and reported having trouble breathing to defendant LVN (Licensed Vocational Nurse) B. Stevens, who was on duty.

1

1   Complaint (Cmp.), p. 3.  Plaintiff asked for a breathing treatment but Stevens said plaintiff had

2   no order for such a treatment and told plaintiff to fill out a sick call slip and he would receive the

3   order in a few days.  Id.  Defendant Stevens performed no physical assessment of plaintiff's

4   lungs, oxygen respiration or respiratory rate.  Id.  Plaintiff asked for his building officer to take

5   him to the TTA,[1]  but per Officer Pieri and his partner, defendant Stevens called them and told

6   them to deny plaintiff's request for the TTA.  Id.  Defendant Stevens called RN [Registered

7   Nurse] K. Martinez at TTA and told her not to accept plaintiff.  Id., at 3-4.

8          Plaintiff asked repeatedly to be taken to TTA, but Pieri continued to deny him

9   based on the call from defendant Stevens and on his own assessment of plaintiff's condition.

10  Cmp., p. 4.  Officer Pieri ordered plaintiff to lock up at about 5:30 p.m.  Id.  Plaintiff continued

11  to seek medical attention throughout the third watch shift, even going "man down."  Id.

12         On June 7, 2009, at approximately 1:00 a.m., during first watch, when plaintiff

13  asked a correction officer making rounds for medical attention, plaintiff was taken to TTA for

14  chest pain and shortness of breath.  Cmp., p. 4.   The TTA RN called Dr. Soltanian who ordered a

15  breathing treatment and told the RN to have plaintiff transported by ambulance to San Joaquin

16  Hospital to rule out a cardiac event.  Id.

17         Plaintiff alleges that he was subjected to unnecessary physical pain and suffering

18  by defendant Stevens who could simply have notified the on-call physician to request and receive

19  the appropriate treatment order.  Cmp., p. 4.  Plaintiff seeks money damages, including punitive,

20  for his needless physical and emotional suffering.  Id., at 3-4.

21  Motion for Summary Judgment

22         Defendant Stevens moves for summary judgment on the grounds that 1) plaintiff

23  failed to respond timely to defendant's requests for admission and thus are deemed admitted

24  pursuant to Fed. R. Civ. P. 36(a)(3); 2) that no evidence supports plaintiff's deliberate

25  _____

26         [1] Defendant Stevens clarifies that TTA is an abbreviation of "Treatment and Triage
    Area."  See MSJ, Declaration of Barbara Stevens (docket # 37-4), ¶ 4.

1  indifference claims; and 3) there is no triable issue of material fact under 42 U.S.C. § 1983.

2  Notice of Motion for Summary Judgment, pp. 1.  These grounds are compressed within the

3  Memorandum of Points and Authorities in support of the Motion for Summary Judgment

4  (hereafter, MSJ) to two: 1) that plaintiff admits that defendant Stevens did not violate his

5  constitutional rights and 2) there is no evidence to support plaintiff's claims of deliberate

6  indifference.  MSJ, pp. 1-11.

7              <u>Legal Standards for Summary Judgment under Rule 56</u>

8              Summary judgment is appropriate when it is demonstrated that there exists "no

9  genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

10  law." Fed. R. Civ. P. 56(c).

11              Under summary judgment practice, the moving party always bears
              the initial responsibility of informing the district court of the basis
12              for its motion, and identifying those portions of "the pleadings,
              depositions, answers to interrogatories, and admissions on file,
13              together with the affidavits, if any," which it believes demonstrate
              the absence of a genuine issue of material fact.

14

15  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

16  P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

17  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

18  depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment

19  should be entered, after adequate time for discovery and upon motion, against a party who fails to

20  make a showing sufficient to establish the existence of an element essential to that party's case,

21  and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552.

22  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

23  necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment

24  should be granted, "so long as whatever is before the district court demonstrates that the standard

25  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323, 106 S. Ct. at

26  2553.

1          If the moving party meets its initial responsibility, the burden then shifts to the

2   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

4   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

5   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

6   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

7   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

8   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

9   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

10  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

11  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

12  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

13  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

14          In the endeavor to establish the existence of a factual dispute, the opposing party

15  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

18  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

20  56(e) advisory committee's note on 1963 amendments).

21          In resolving the summary judgment motion, the court examines the pleadings,

22  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

25  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

26  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

4

obligation to produce a factual predicate from which the inference may be drawn.  See Richards

v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

(9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On February 25, 2010, the court advised plaintiff of the requirements for opposing

a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

1988).  The above advice would, however, seem to be unnecessary as the Ninth Circuit has held

that procedural requirements applied to ordinary litigants at summary judgment do not apply to

prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the district courts

were cautioned to "construe liberally motion papers and pleadings filed by *pro se* inmates and . . .

avoid applying summary judgment rules strictly."  Id. at 1150.  No example or further definition

of "liberal" construction or "too strict" application of rules was given in Ponder suggesting that

any jurist would know inherently when to dispense with the wording of rules.  Since the

application of any rule which results in adverse consequences to the pro se inmate could always

be construed in hindsight as not liberal enough a construction, or too strict an application, it

appears that only the essentials of summary judgment, i.e., declarations or testimony under oath,

and presentation of evidence not grossly at odds with rules of evidence.

Undisputed Facts

Plaintiff expressly does not dispute a number of defendant Stevens' undisputed

facts (Memorandum of Points and Authorities in support of Motion for Summary Judgment

(MSJ) (docket # 37-1), pp. 2-5, defendant's undisputed material facts (DUF)(docket # 37-2), pp.

1-11; plaintiff's Opposition (Opp.) (docket # 38), p. 3, averring that he does not contest the

following).  In addition, at least one fact he purports to dispute he mis-identifies or otherwise

5

1   fails to do so which is noted in the following:  1.  Defendant Stevens is a licensed vocational

2   nurse (LVN) with the California Department of Corrections and Rehabilitation (CDCR) at Mule

3   Creek State Prison (MCSP).  2. Stevens has been has been employed and held the position of

4   licensed vocational nurse, with the CDCR at MCSP since February 14, 2007.  3.  A nebulizer is a

5   device used to administer medication in the form of a mist inhaler into the lungs of patients with

6   respiratory distress.  4. The nebulizer changes liquid medicine into fine droplets (in aerosol or

7   mist form) that are inhaled through a mouthpiece or mask.  5.  Nebulizers can be used to deliver

8   bronchodilator (airway-opening) medicines such as albuterol.  6.  Albuterol is a prescribed

9   medication used to prevent and treat wheezing, difficulty breathing and chest tightness caused by

10  lung diseases such as asthma and chronic obstructive pulmonary disease (COPD; a group of

11  diseases that affect the lungs and airways).  7.  Albuterol works by relaxing and opening air

12  passages to the lungs to make breathing easier.  8. A nebulizer is a device used to administer

13  medication in the form of a mist inhaler into the lungs of patients with respiratory distress.[2]  9.

14  During an episode of respiratory distress, airways to the lungs narrow due to increased

15  inflammation and breathing becomes laborious.  10.  Albuterol nebulizer treatment can be used

16  to relax the airways and to return normal breathing patterns.  11.  Only a licensed physician may

17  prescribe albuterol nebulizer treatment.  16.  If upon physical assessment, the LVN determines

18  that the inmate is in respiratory distress, and the inmate has an existing order for nebulizer

19  treatment, then the LVN may provide the inmate with the nebulizer treatment.  19.  Among

20  defendant Stevens' duties on June 6, 2009 was to work the A-Facility Clinic window and pass

21  out medication to inmates.  25.  Plaintiff was able to talk clearly and make his needs known

---

22

23      [2] Plaintiff purports to dispute DUF 8, by stating "plaintiff never stated nor inferred [sic]
    that Albuterol 'cures' asthma."  In the first place, that is not what is set forth as undisputed and,
24  in the second, plaintiff's evidence in dispute, the declaration of an attorney, LaKeysia Beene,
    submitted in support of defendant's opposition to plaintiff's earlier motion to compel simply
25  points to his own interrogatory about when an Albuterol inhaler becomes ineffective.  Opp., p. 8,
    citing Ex. A # 5, to defendant's opposition to plaintiff's motion to compel.  In any case,
26  defendant's supporting evidence, the declaration of Dr. Scott Heatley, docket #37-5, supports this
    fact sufficiently to render it undisputed.

verbally.  26.  Defendant Stevens obtained plaintiff's CDCR number and looked up his medical

history in the clinic computer.  27.  The search revealed that plaintiff had prescriptions for two

inhalers which he was allowed to carry on his person, but there were no orders for albuterol

treatment.  28.  Defendant Stevens cannot provide an inmate with albuterol treatment without a

physician's order.  36.  Plaintiff alleges that at approximately 5:30 p.m. on June 6, 2009, he went

to the A-yard clinic because he was having trouble breathing.  37.  At 6:10 p.m., Officer Pieri

checked on plaintiff.  38.  Pieri observed that plaintiff was standing in his cell, alert, and

talkative.  39.  Plaintiff talked at great length to Pieri regarding Pieri denying him medical access.

40.  There is an inmate grievance system at MCSP.  44.  On July 23, 2010, defendant Stevens

served plaintiff with requests for admission and interrogatories.  45.  The admission requests

were based on allegations made in the complaint and were designed to be, and were,

accompanied by interrogatories.  46.  The interrogatories were designed to elicit particular facts

plaintiff had to support his claims against defendant Stevens, and to narrow the issues in the suit.

47.  On August 31, 2010, plaintiff filed a motion with the court which provided that he declined

to answer defendant's first set of admissions.  48.  Further, plaintiff's response to all of the

interrogatories was merely an objection based on his belief that defendant Stevens[3] requests for

admission were "invalid."  49.  Pursuant to the court's Discovery and Scheduling Order,

responses to the requests were due September 6, 2010.

<u>Facts in Dispute</u>

Plaintiff takes issue with the following facts defendant sets forth as undisputed:

12. If an inmate requests nebulizer treatment from an LVN at Mule Creek, the

LVN must first physically assess the inmate for symptoms of respiratory distress.  MSJ DUF

(docket #37-2), Defendant's support for DUF 12 is a declaration by the MCSP director of nursing

employed by CDCR, M. Brady, at ¶ 4 (docket # 37-6).  Plaintiff appears to be asserting more as

---

[3] Defendant actually asserts plaintiff's name here, but that is obviously unintentionally erroneous.

7

his own undisputed fact, rather than simply disputing DUF 12, that defendant Stevens never performed a physical assessment and cites as evidence in dispute defendant's supplemental response to plaintiff's interrogatory # 4. Opp., p. 8 & Exhibit (Ex.) C (pp. 24-25). In a supplemental response to plaintiff's question as to whether the defendant had performed a complete medical evaluation of plaintiff on June 6, 2009, defendant offered the following, without waiving asserted objections:

> Responding party performed a complete medical assessment on plaintiff, given the plaintiff's request to use a nebulizer. She performed a visual inspection of plaintiff, and she observed that plaintiff was not displaying the usual signs of respiratory distress. Plaintiff's lips were not blue or dusky, his color was normal, he walked normally, and stood without support. No wheezing was heard when plaintiff breathed or spoke, he did not appear short of breath, his breathing was not laborious and he was not straining to get air.

Opp., p. 25.

Plaintiff maintains that defendant in admitting that she performed "a visual inspection" signifies that she, at least implicitly, concedes that she did not carry out a "physical assessment" of him. Id., at 3. Plaintiff also cites defendant Stevens' declaration in support of MSJ. Opp., p. 3, citing Declaration of Barbara Stevens (docket # 37-4), ¶ 5, which essentially reiterates the supplemental interrogatory response above but stating that she performed a visual "assessment" rather than a visual "inspection" of plaintiff's condition.

13. Signs and symptoms of respiratory distress include shortness of breath, rapid breathing rate, color changes around the mouth, on inside of lips, or skin color, nose flaring, chest retractions, sweating, grunting sounds, inability to speak, wheezing, and difficulty walking. Defendant's rely on defendant Stevens' Dec (docket # 37-4), ¶ 3 and the Brady Dec (dkt # 37-6) ¶4 in support of DUF 13. Plaintiff in seeking to dispute DUF 13, or assert as his own alternative undisputed fact that "[a]sthmatics may exhibit one or more signs and symptoms but not necessarily all of them," cites a copy of a "TTA Progress Note." Opp., p. 8 & Ex. E, p. 43. This document is problematic in not having been properly authenticated; in addition, the copy plaintiff

8

1   includes with his opposition does not clearly show the date, or at least the month of the entry.

2   However, by reference to Exhibit C to the declaration by Attorney LaKeysia Beene, ¶ 6, filed in

3   support of defendant's motion, the affidavit of plaintiff, originally filed on November 8, 2010,

4   itself has an Ex. C, an unauthenticated copy of the interdisciplinary progress notes for plaintiff

5   which shows a visible date and time:  6/7/09 at 0115.  MSJ, Beene Dec. (Docket # 37-14), Exh. C,

6   p. 2; see also, footnote 5, & docket # 33, plaintiff's affidavit, Exh. C, p. 27. [4]  This entry tracks as

7   to date and time what plaintiff has described occurred following the evening incident on June 6,

8   2009, at issue herein.   As for admitting this exhibit, the Ninth Circuit does not simplify this

9   court's determination.   On the one hand, the Court of Appeals has very recently affirmed that

10   "unauthenticated documents cannot be considered in a motion for summary judgment," Las Vegas

11   Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011)[internal citation omitted].   Conversely,

12   this court remains guided by the authority of  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir.

13   2003) (evidence which could be made admissible at trial may be considered on summary

14   judgment); see also Aholelei v. Hawaii Dept.of Public Safety, 220 Fed. Appx. 670 *1(9th Cir.

15   2007)(district court abused its discretion in not considering plaintiff's evidence at summary

16   judgment, "which consisted primarily of litigation and administrative documents involving

17   another prison and letters from other prisoners" which evidence could be made admissible at trial

18

19

_____

20       [4] It is difficult to discern precisely what constitutes plaintiff's affidavit as he does not
    identify per se a declaration attached to his opposition to the MSJ; however, he does sign the

21   portion of his "motion in opposition" at pages 1-11, under penalty of perjury.   Plaintiff refers to
    his affidavit within his opposition as Exh. A, pp. 12-15, but that document is a copy of

22   defendant's requests for admission with plaintiff's handwritten objections, his initial inadequate
    response to the requests.  On the other hand, defendant includes as Exh. C to the declaration of

23   Attorney LaKeysia Beene in support of defendant's motion, a copy of a document not associated
    with the opposition to the summary judgment motion and in fact filed by plaintiff, at docket # 33,

24   on November 8, 2010, prior to filing of the motion for summary judgment.   That filing is entitled
    "Affidavit of Bryan A. Douglas in support of plaintiff Bryan Anthony Douglas" and is signed

25   under penalty of perjury.  The court will therefore construe defendant's Exh. C (docket # 37-13
    & 37-14) to the Beene Dec. as plaintiff's declaration in opposition to the summary judgment

26   motion.

through the other inmates' testimony at trial).[5]   Adding weight to the <u>Fraser</u> court authority,

particularly when applied in a case like this one involving a pro se prisoner litigant, is the more

recent admonition of <u>Thomas v. Ponder</u>, 611 F.3d at 1150, cited earlier, wherein district courts are

cautioned to "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid

applying summary judgment rules strictly."   In light of such apparently conflicting direction, the

undersigned is constrained to apply the more liberal application to the evidence submitted by this

pro se plaintiff.  As noted, this document appears to substantiate plaintiff's underlying allegation

that on June 7, 2009, at approximately 1:00 a.m., he was taken to TTA for chest pain and

shortness of breath and that the TTA RN called Dr. Soltanian who ordered a breathing treatment

and told the RN to have plaintiff transported by ambulance to San Joaquin Hospital to rule out a

cardiac event.  Among the notes legible and comprehensible to the court are that plaintiff "states

he has tightness because he can't take a deep breath"; that he is "very pale" and his "facial

expressions shows [sic] distress" that his "pulse rate is tachy at 101. . . ."  Plaintiff's Dec (dkt #

33), Exh. C; Opp. (dkt # 38), Ex. F, p. 43; MSJ, Beene Dec. (dkt # 37-14), Exh. C, plaintiff's

affidavit, Exh. C, p. 2.  It is evidently noted that he did not display "audible wheezing" and despite

his "respiratory distress"  was "able to talk.  <u>Id.</u>  In addition, it is noted that a call was made to

Dr. Soltanian and "Albuterol treatment given per protocol and M.D. order."  <u>Id.</u>  Moreover, the

notation "send to hospital" is also included.  The note appears to be signed by an RN named

Garrett on Gammett.  <u>Id.</u>  Further, in plaintiff's affidavit at dkt # 33, Exh. C includes a page of

notations evidently made by Dr. Soltanian, indicating that he was the on-call physician, that he

was informed at 2:05 a.m. by the TTA RN that plaintiff's vital signs were "stable" and his exam

"unremarkable," but that plaintiff was in "acute distress."  Plaintiff's dec (dkt # 33), p. 27;  MSJ,

---

[5] The Ninth Circuit now permits citation to unpublished cases.  Ninth Circuit Rule 36-3, in accordance with Fed. R. App. P. 32.1, permits citation to unpublished dispositions and orders issued on or after January 1, 2007.  However, such rulings "are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  Ninth Circuit Rule 36-3(a).

1    Beene Dec. (dkt # 37-14), Exh. C, plaintiff's affidavit, Exh. C, p. 3.  It appears that the RN

2    thought that plaintiff's problem was "cardiac in origin" and Dr. Soltanian notes the direction to

3    "send to SJGH[6] via ambulance."  Id.  (This court simply cannot decode a number of the medical

4    abbreviations but plaintiff's asthma is noted.  Id.)  A TTA Progress Note follows, noting at an

5    entry on 6/7/09 at 2:30 a.m., that a D. Carper, SRN spoke to Dr. Soltanian with respect to a

6    breathing treatment that had evidently been administered to plaintiff, observing that plaintiff's

7    "breathing" was "easier" and that plaintiff stated that he felt better.  MSJ, Beene Dec. (dkt # 37-

8    14), Exh. C, plaintiff's affidavit, Exh. C, p. 4.  The entry goes on:

9               Breath sounds clear all fields, less diminished than earlier (prior to
                breathing treatment).  Dr. Soltanian gave orders to send to SJGH
10              Code 2 to rule out cardiac problems.

11   Id.

12          An entry, signed by M. Garrett (or Gannett) R.N. on 6/7/09, at 0335 states in part:

13   "Left by ambulance - Code 2[.] Pt is comfortable for respiratory distress."  Id.  It was also noted

14   that a report had been given to ER Nurse Arroyo RN.  Id.

15          A physician's order, dated 6/7/09 at 0205, shows an order to send plaintiff to San

16   Joaquin General Hospital by ambulance and that a breathing treatment had been given and that

17   plaintiff at 02:30 was still to be sent out to the hospital to rule out cardiac problems.  The order

18   references, inter alia, Dr. Soltanian, but includes a stamped name: "Sahir Naseer, M.D."  MSJ,

19   Beene Dec. (dkt # 37-14), Exh. C, plaintiff's affidavit, Exh. C, p. 5.  Copies of the records of his

20   treatment at San Joaquin General Hospital's Emergency Department on 6/7/09 are also included.

21   MSJ, Beene Dec. (dkt # 37-14), Exh. C, plaintiff's affidavit, Exh. D, pp. 9-20.   Plaintiff has

22   sufficiently supported his statement that all signs/symptoms of respiratory distress may not be in

23   evidence when an asthmatic is having difficulty breathing.

24          14.  Depending on the inmate's physical symptoms, the LVN may also take

25   ───────────────

26        [6] SJGH appears to stand for San Joaquin [General] Hospital, to which plaintiff avers he
     was taken on June 7, 2009, within his amended complaint.

1   diagnostic tests, such as oxygen saturation or peak flow tests, to determine the severity of the

2   inmate's symptoms.  Defendant's supporting evidence for DUF 14 is in the form of the following

3   from the Director of Nursing at MCSP, M. Brady:

> If an inmate requests nebulizer treatment from a licensed vocational
> nurse (LVN) at Mule Creek, the LVN must first physically assess
> the inmate for symptoms of respiratory distress. Symptoms may
> include: shortness of breath, rapid breathing rate, color changes
> around the mouth, on inside of lips, or skin color, nose flaring, chest
> retractions, sweating, grunting sounds, inability to speak, wheezing,
> and difficulty walking. A patient is not normally capable of yelling
> or screaming if he is under respiratory distress.  Depending on the
> inmate's physical symptoms, the LVN may also take diagnostic
> tests, such as oxygen saturation or peak flow tests, to determine the
> severity of the inmate's symptoms. Such tests need not be
> performed, however, if the inmate is not showing any physical
> symptoms of respiratory distress.

11   MSJ, Brady Dec (docket # 37-6) ¶ 4.  Plaintiff's purported evidence disputing DUF 14 is that

12   defendant Stevens failed to do any diagnostic testing to determine the severity of plaintiff's

13   distress, citing defendant's supplemental response to interrogatories, Opp., p. 25 (Ex. C, # 4),

14   which has been quoted above (see DUF 12 discussion).  Plaintiff's evidence does show that

15   defendant Stevens did not do any diagnostic testing, but that is not really a matter in dispute.

16         15.  Such tests need not be performed, however, if the inmate is not showing any

17   physical symptoms of respiratory distress.   In support of DUF 15, defendant relies on the

18   paragraph of the Brady Dec. quoted in support of DUF 14, while plaintiff maintains that such tests

19   "are a basic requirement to determine severity." Opp., p. 8, citing Exhs. E & F.  Exh. E contains

20   an excerpt of an unauthenticated copy of a document apparently entitled "CDCR Asthma Disease

21   Medication Management Guidelines," dating from 2007, setting forth guidelines for assessing

22   various levels of severity of acute asthma and for the respective treatment of same.  It also

23   contains the caveat "[t]his pathway does not replace sound clinical judgement [sic] or apply to all

24   patients."  Defendant, in her reply, objects to the evidence as calling for an expert opinion, citing

25   Fed. R. Evid. 701 & 702.  Reply, Objs. to plaintiff's UF (docket # 39-2), # 1.  The court will

26   sustain the objection to plaintiff's Exh. E because these guidelines do not illuminate for the court,

1  absent medical expertise to clarify them, what would have been appropriate for plaintiff's

2  condition when he presented to the defendant.  In addition, the caveat contained within the

3  guidelines themselves serves to undercut or disclaim the applicability of the guidelines to any

4  specific individual.   Plaintiff's Exh. F, however, is the progress note entry discussed earlier which

5  the court has previously permitted in evidence in opposition to defendant's motion and

6  defendant's objection to this document is overruled.

7          17.  If, on the other hand, the inmate is suffering from respiratory distress and there

8  is no existing order for nebulizer treatment, then the LVN must contact a registered nurse or

9  physician.  MSJ, Brady Dec (dkt # 37-6) ¶5; Stevens Dec (dkt # 37-4) ¶4.  18.  The registered

10  nurse or physician will then make a determination on how to treat the inmate.  MSJ DUF, p. 5,

11  citing Brady Dec ¶ 5; Stevens Dec ¶ 4.  Plaintiff seeks to dispute DUF 17 & 18, or state as his

12  own undisputed facts, that the defendant refused to contact the nurse or on-call physican, citing

13  his own affidavit, that once the defendant learned no order existed, she refused to call TTA or the

14  on-call physician.  Opp. (Dkt # 38), p. 8, referencing Exh. F &  plaintiff's declaration, located at

15  MSJ, Beene Dec. (dkt # 37-13), Exh. C, plaintiff's affidavit, pp. 2-3.  Defendant objects that

16  plaintiff's assertions lack foundation and call for speculation.  Reply, Objections to plaintiff's

17  statement of undisputed material facts PUF (to the extent that they can be so construes) (dkt # 39-

18  2).  Plaintiff's evidence to dispute DUF 17 & 18 does not really counter the defendant's

19  statement, rightly or wrongly, if she did not perceive that plaintiff was suffering from respiratory

20  distress, but it does lend support to plaintiff's own characterization of his undisputed fact that the

21  defendant refused to call TTA or a physician when it was determined that there was no

22  physician's order for it.

23          20.  Defendant Stevens also performed medical assessments of patients before

24  referring the patient to a registered nurse or physician.   MSJ DUF, p. 5, citing defendant Stevens

25  Dec ¶2.  Plaintiff counters that the defendant neither performed any medical assessment nor

26  referred plaintiff to the TTA, citing defendant's supplemental responses to interrogatories.  Opp.,

Ex C # 4, which as noted above, asserted that she had "performed a complete medical assessment on plaintiff," which is detailed as "a visual inspection" of plaintiff for the "usual signs of respiratory distress," which were apparently not in evidence to her, as previously set forth above in plaintiff's response to DUF 12.  It is unclear how, whether defendant Stevens performed medical assessments before referring a patient to a more experienced medical professional, is a particularly relevant point.

21.  On June 6, 2009, while defendant Stevens was passing out medication at the facility clinic window, plaintiff walked up to her and requested albuterol nebulizer treatment. MSJ DUF, p. 5, citing defendant Stevens Dec ¶5.  Plaintiff counters that he stated that he was having trouble breathing and defendant's response was "what do you want me to do about it," at which point plaintiff requested an albuterol treatment.  Opp, p. 9, citing plaintiff's declaration located at MSJ, Beene Dec. (dkt # 37-13), Exh. C, plaintiff's affidavit, p. 2.  Plaintiff's affidavit does not really counter this DUF 21.

22.  Given his request for albuterol, defendant Stevens performed a visual assessment of plaintiff and observed that he was not displaying the usual signs of respiratory distress.  MSJ DUF, p. 5, citing Stevens Dec ¶5.  Plaintiff contends defendant should have performed a physical assessment, not a visual one.  Opp., citing MSJ Brady Dec., ¶ 4.  However, when RN Brady refers to the LVN making a physical assessment of an inmate for symptoms of respiratory distress, it appears to be another way of saying a visual assessment, since the symptoms include symptoms that could be detected by observation, shortness of breath, rapid breathing rate, color changes, etc.  (The court has disallowed plaintiff's  Exh. E).  In any event, DUF 22 is not really countered by plaintiff's opinion that the defendant should have performed a more thorough assessment and defendant is correct that such an statement calls for an expert opinion.  Reply, Obj to PUF (dkt 39-2), citing Fed. R. Evid. 701, 702.

23.  Plaintiff's lips were not blue or dusky, his color was normal, he walked normally, and stood without support.  MSJ DUF, p. 6, citing defendant Stevens Dec ¶5.  Plaintiff

counters with reference to his condition as noted in his Exh. F, the progress notes for 6/7/09.  24.

No wheezing was heard when plaintiff breathed or spoke, he did not appear short of breath, his

breathing was not laborious and he was not straining to get air.  MSJ DUF, p. 6, citing defendant

Stevens Dec ¶5.  Plaintiff asserts that he did not complain of wheezing, but of trouble breathing,

stating that he does not always exhibit wheezing.  Opp., Exh. F (which notes plaintiff did not

show audible wheezing but was in distress).  It is not clear whether or not plaintiff rapidly

deteriorated following his initial request for treatment to the defendant which was refused, but

plaintiff's evidence does raise an issue as to what should have been discernible by the defendant.

29.  When defendant informed plaintiff that she could not give him a nebulizer

treatment without a doctor's order and that he would need to submit a CDC 7362 form (Health

Care Services Request Form) in order to obtain albuterol treatment, plaintiff began to yell at

defendant Stevens.  MSJ DUF defendant Stevens Dec ¶5.  Plaintiff disputes this, or as he frames

it, states as an undisputed fact, that defendant has no evidence that plaintiff yelled, citing as

supporting evidence that there is no disciplinary action in his central file.  Opp., p. 9.  Although

this unsupported statement is not really evidence, he also sets forth in that portion of his

opposition signed under penalty of perjury that defendant does not produce any computer entry

that she reported inappropriate behavior by plaintiff, there is no 128C or 115.  Opp., p. 8.

30. If a patient is able to yell, then there is no narrowing of the lungs and, therefore,

most likely no distress in the chest.  MSJ DUF, p. 7, citing Stevens Dec ¶5; Brady Dec ¶4.

Plaintiff repeats his response to DUF 29.   Opp., p. 9.  Thus, of course, if plaintiff never did any

yelling, a matter in dispute, DUF 30 has no relevance.

31. At no time during defendant Stevens interaction with plaintiff did he appear to

be in respiratory distress.  MSJ DUF, p. 7, citing Stevens Dec ¶5.  32. Defendant Stevens has

never formed the opinion that plaintiff was in respiratory distress.  MSJ, DUF, p. 7, Stevens Dec

¶5.  Plaintiff has repeatedly maintained that defendant did not make a proper assessment to

determine plaintiff's respiratory distress and contends, citing previously referenced evidence, that

1    defendant Stevens failed to perform a physical assessment and thus could not form an accurate

2    opinion as to whether he was in distress or not.  Opp., p. 9, citing Exhs. C. defendant's

3    supplemental response to interrogatories which plaintiff has previously cited & F.  While plaintiff

4    cannot dispute DUF 32 as to the defendant's own opinion, of course, and defendant seeks to

5    object to plaintiff's evidence to counter DUF 31 and 32, or to support his own assertions (as PUF

6    31 and 32), as calling for an expert opinion, plaintiff, an asthmatic, arguably does not need

7    medical expertise to raise a question with respect to DUF 31, as to whether he appeared to be in

8    respiratory distress.

9            33.  Defendant Stevens does not have the authority to tell other personnel whether

10   or not to provide medical treatment to an inmate.  MSJ DUF, pp. 7-8, citing Stevens Dec ¶6.

11   Citing his affidavit, plaintiff contends that the defendant, did indeed, exceed her authority by

12   telling other personnel not to take plaintiff to the TTA.  Opp., p. 9, citing plaintiff's affidavit

13   (MSJ, Beene Dec. (dkt # 37-13), Exh. C, plaintiff's affidavit, pp. 2).  (Of course, this does not

14   actually counter the statement that defendant Stevens lacks authority to tell other personnel not to

15   provide plaintiff with medical treatment, whether she did so or not).   34.  Defendant Stevens

16   never called or informed anyone not to provide plaintiff with medical treatment.  MSJ DUF, p. 8,

17   citing Stevens Dec ¶7.  Plaintiff counters that the defendant called Guntower Officer Gagnon and

18   RN Martinez and told them not to admit plaintiff to TTA.  Opp., p. 9, citing plaintiff's affidavit,

19   MSJ, Beene Dec. (dkt # 37-13), Exh. C, plaintiff's affidavit, p. 2.  As to both DUF 33 and 34 (or

20   as PUF 33 and 34), defendant objects that there is a lack of foundation (Fed. R. Evid. 602).

21   Reply, Objs. to PUF (docket # 39-2).  It is possible that plaintiff could call witnesses to testify on

22   this issue, but defendant is correct that plaintiff does not really show a proper foundation for his

23   position.

24           35.  The Health Care Services Request Form that plaintiff submitted on June 6,

25   2009 merely requests albuterol treatment on an "as needed basis" because he has had trouble

26   breathing in the last several days.  MSJ, Beene Dec ¶6, Exh. C, Affidavit of Bryan Douglas

(plaintiff), Exh. A.  Plaintiff also citing his affidavit, states that the form states he was denied

treatment.  Opp., p. 10.  There does not actually appear to be a dispute as to plaintiff's claim of his

having trouble breathing but defendant apparently believes that the form shows a lack of urgency,

while plaintiff evidently believes that the (virtually illegible) form shows defendant's inadequate

medical treatment of his condition.

41. On June 7, 2009, plaintiff submitted an inmate appeal (Log # 09-11758)

alleging that defendant Stevens had a non-professional attitude after plaintiff requested albuterol

treatment on June 6, 2009.  MSJ DUF, p. 9, citing Declaration of Appeals Coordinator Thomason

¶6.   Plaintiff asserts that he stated in the appeal that both defendant and Martinez should be

reprimanded for unprofessional behavior in denying him treatment.  Opp., p. 10, citing Exh. A to

the MSJ Thomason Dec.  While that appears to be the case, it is unclear how this DUF 41 is in

dispute.

42. After a Mule Creek inquiry into plaintiff's allegations against defendant

Stevens, it was determined that appropriate care was provided to plaintiff on June 6, 2009, and

that there was no misconduct or unprofessional treatment to plaintiff by defendant Stevens.  MSJ

DUF, p. 9, Thomas Dec, ¶6, and Second Level Response Memorandum attached as Exhibit "A."

Plaintiff cites the evidence he has referenced earlier in opposition, with respect to what occurred

later on June 6 and 7, 2009 in his medical treatment, to show defendant did not provide

appropriate care.  Although defendant objects that plaintiff's position must be supported by expert

opinion, plaintiff does at least raise a genuine issue by the medical evidence produced as to

whether or not defendant provided adequate medical care.

43.  Plaintiff failed to timely respond to Requests for Admission propounded by

defendant Stevens. MSJ DUF, pp. 9-10, citing Beene Dec ¶¶5, 7 and Motion in Opposition to

Defendant's Request for Admission, attached as Exhibits "D."  50.  Defense counsel did not

receive plaintiff's responses to defendant Stevens' request for admission until November 15,

2010.  MSJ DUF, p. 11, citing  Beene Dec ¶5.  51.  As a result, plaintiff has admitted that

1  defendant Stevens has not violated any of his constitutional rights, and that he has not suffered

2  any injuries as a result of defendant Stevens' actions.  MSJ DUF, p. 11, Beene Dec ¶ 3, and the

3  Requests for Admission propounded to plaintiff attached as Exhibit "A."  MSJ, DUF, pp. 3-11;

4  Opp., pp., 3, 8-10.  Plaintiff maintains he responded timely.  Opp, p. 10, citing Exhs. A & B.  (See

5  discussion below re: substance of DUF 43, 50-51).

6  <u>Legal Standard for Eighth Amendment Claim</u>

7          In order to state a § 1983 claim for violation of the Eighth Amendment based on

8  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

9  deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct.

10  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

11  serious, and that the defendant possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>,

12  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir.

13  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

14  <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

15          A serious medical need exists if the failure to treat a prisoner's condition could

16  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

17  that a prisoner has a serious need for medical treatment are the following:  the existence of an

18  injury that a reasonable doctor or patient would find important and worthy of comment or

19  treatment; the presence of a medical condition that significantly affects an individual's daily

20  activities; or the existence of chronic and substantial pain.  <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900

21  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01

22  (9th Cir. 1989).  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u>

23  <u>grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

24          In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

25  defined a very strict standard which a plaintiff must meet in order to establish "deliberate

26  indifference."  Of course, negligence is insufficient.  <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1978.

1    However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

2    which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

3    Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

4    should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

5                  A prison official acts with "deliberate indifference . . . only if the [prison official]

6    knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of

7    Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks

8    omitted).  Under this standard, the prison official must not only "be aware of facts from which the

9    inference could be drawn that a substantial risk of serious harm exists," but that person "must also

10   draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811

11   (1994).  "If a [prison official] should have been aware of the risk, but was not, then the [official]

12   has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188

13   (citation omitted).FN4  This "subjective approach" focuses only "on what a defendant's mental

14   attitude actually was." Farmer, 511 U.S. at 839, 114 S.Ct. 1970.  "Mere negligence in diagnosing

15   or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

16   rights." McGuckin, 974 F.2d at 1059 (alteration and citation omitted).

17                  FN4. In a recent case, we recognized that "deliberate indifference to
                   medical needs may be shown by circumstantial evidence when the
18                 facts are sufficient to demonstrate that a defendant actually knew of
                   a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th
19                 Cir.2003) (citations omitted); see also Gibson, 290 F.3d at 1197
                   (acknowledging that a plaintiff may demonstrate that officers "must
20                 have known" of a risk of harm by showing the obvious and extreme
                   nature of a detainee's abnormal behavior).

21

22   Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)

23                  Also significant to the analysis is the well established principle that mere

24   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

25   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

26   662 F.2d 1337, 1344 (9th Cir. 1981).

1    Moreover, a physician need not fail to treat an inmate altogether in order to violate

2 that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

3 1989).  A failure to competently treat a serious medical condition, even if some treatment is

4 prescribed, may constitute deliberate indifference in a particular case.  Id.

5    Additionally, mere delay in medical treatment without more is insufficient to state

6 a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

7 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

8 no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

9 Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

10 1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

11 to provide additional support for a claim of deliberate indifference; however, it does not end the

12 inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

13 medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

14 needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the

15 defendant."  McGuckin, 974 F.2d at 1061.

16    Superimposed on these Eighth Amendment standards is the fact that in cases

17 involving complex medical issues where plaintiff contests the type of treatment he received,

18 expert opinion will almost always be necessary to establish the necessary level of deliberate

19 indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

20 may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

21 treatment he received equated with deliberate indifference thereby creating a material issue of

22 fact, summary judgment should be entered for the defendant.  The dispositive question on this

23 summary judgment motion is ultimately not what was the most appropriate course of treatment for

24 plaintiff, but whether the failure to timely give a certain type of treatment constituted deliberate

25 indifference.

26 ////

Discussion

Defendant contends that plaintiff admits that defendant did not violate his constitutional rights, predicated on plaintiff's alleged failure to respond timely to defendant's requests for admission.  MSJ (docket # 37-1), pp. 1, 10-12, citing Fed. R. Civ. P. 36(a)(3); Federal Trade Commission v. Medicor LLC, 217 F. Supp.2d 1048, 1053 (C.D. Cal. 2002)("[f]ailure to timely respond to requests for admissions results in automatic admission of the matters requested").  In addition, defendant observes that matters deemed admitted can serve as a proper basis for granting a summary judgment motion.  Id., at 10, citing Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007).  Plaintiff contends he followed the court's discovery order as best he could and avers that he complied with the court's subsequent order in October, 2010.  Opp., pp. 1-2.

In the May 12, 2010 Discovery and Scheduling Order (docket # 20), the parties were informed that the discovery deadline was September 23, 2010, that any motions necessary to compel discovery were to be filed by that date, that all requests for discovery were to be served not later than sixty days prior to that date.  On July 19, 2010 (dkt # 22), plaintiff filed a motion to compel responses to set one of plaintiff's interrogatories.   On August 31, 2010 (dkt # 25), plaintiff filed a document entitled "motion in opposition to defendant's request for admissions: set 1."

In an order addressing and denying plaintiff's motion to compel, the court also observed the following with regard to plaintiff's separate putative motion opposing defendant's requests for admission:

> Anomalously, plaintiff has also filed a motion to deny defendant's "motion for admissions," apparently served on him on August 3, 2010, protesting that he "respectfully declines to answer" the requests "under the authority of FRCP 36."  See "plaintiff's motion in opposition to defendant's request for admissions," filed on August 31, 2010, p. 1, docket # 25.[]   However, there is no motion to compel responses filed as to any requests for admissions propounded by the defendant upon the plaintiff, nor are any such requests submitted before this court.  Therefore, the response or

21

opposition to such non-existent motion will be disregarded. However, plaintiff is cautioned that a failure to respond to requests for admission altogether, propounded pursuant to Fed. R. Civ. P. 36, in this case, within forty-five days of service of the requests, renders the matter admitted.  See Fed. R. Civ. P. 36[a](3).

Pursuant to Fed. R. Civ. P. 36(a)(4):

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Finally, as to any objections to any request for admission:

> The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

Fed. R. Civ. P. 36(a)(5).

> Plaintiff does not have the authority pursuant to Fed. R. Civ. P. 36, as he maintains, simply to disregard the requests for admission. The court will, in light of the information provided plaintiff herein generously grant plaintiff an additional twenty-eight days from the date of this order to respond to the requests for admission to which plaintiff, generically and without foundation, submits his protests.

Order, filed on October 25, 2010 (dkt # 28), pp. 1-2.

This court, therefore, granted plaintiff until November 22, 2011 (28 days from 10/25/11, if three days for mailing pursuant to Fed. R. Civ. P. 6(d), are added, the deadline would be Nov. 25, 2011) to serve responses to defendant's requests for admission.  In their summary

////

////

////

judgment motion, defendant's counsel references September 6, 2010,[7] as the due date for

defendant's requests for admission served on July 23, 2010, noting that the responses were not

received until November 15, 2010.[8]   MSJ, pp. 5, 10, DUF 49 & 50, Declaration of Attorney

LaKeysia Beene, (docket # 37-11), ¶¶ 3, 5 & Exh. A, which shows defendant's requests for

admission, set one, served on July 23, 2010 & Exh. B, which shows defendant's set one

interrogatories, which accompanied the requests for admission, served on July 23, 2010,

containing plaintiff's responses in the form of objections only, dated August 29, 2010.  Arguing

the untimeliness of the responses, defendant relies on Fed. R. Civ. P. 36(a)(3) to note that in such

a case, the requests are deemed admitted.

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party, a written answer or objection, addressed to the matter and signed by the party or its attorney.  A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3).

While, as noted, the court's Discovery and Scheduling order (p. 5) permitted forty-

five, rather than thirty days, for discovery responses to be served, a further ruling by the court

granted plaintiff, as noted in the portion of the Oct. 25, 2011 order excerpted above, an extension

of time within which to provide substantive responses.  Plaintiff contends that since defendant did

not bring a motion to compel with regard to the requests for admissions, she should not be

permitted to invoke Rule 36, but defendant is not constrained to do so and she may, in fact,

proceed with the requests deemed admitted if plaintiff was, in fact, untimely in his responses.

Federal Trade Commission v. Medicor LLC, 217 F. Supp.2d at 1053 ("[n]o motion to establish

the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing.").

---

[7] The parties were allowed forty-five days to serve responses to written discovery requests.  See Discovery and Scheduling order (dkt # 20), p. 5.

[8] Elsewhere, defendant's counsel, probably inadvertently, made a reference to the responses having been received on November 11, 2010.  MSJ, p. 10.

1    However, defendant's position overlooks the extension of time granted sua sponte

2  by the court for plaintiff to provide his responses and defendant's own evidence shows that

3  plaintiff did respond within that time extension window and on that basis, defendant does not

4  demonstrate the untimeliness of the responses.  Defendant does assert that the requests for

5  admission were accompanied by interrogatories designed to elicit specific facts plaintiff had to

6  support his claim, but, as noted, plaintiff's response to all the interrogatories was an objection

7  predicated on plaintiff's belief that the requests for admission were "invalid."  MSJ, p. 10.

8  Defendant argues that the untimely response to the requests for admission as well as the lack of

9  adequate responses to the interrogatories denied defendant an adequate opportunity to conduct

10  discovery.  Id.  However, when the court granted plaintiff the extension of time to provide

11  responses to the requests for admission, defendant could have sought leave to bring a motion to

12  compel responses to the interrogatories when the admission responses were served on the basis

13  that there was good cause for such an extension as the court had permitted plaintiff the extra time

14  to serve responses to defendant's admission requests.  Even now, defendant Stevens does not

15  challenge the adequacy of the admission request responses, only their untimeliness, but rather

16  challenges the adequacy of the accompanying interrogatories, bringing them to the court's

17  attention for the first time.  The court denied plaintiff's request for an extension of time to conduct

18  discovery, opposed by defendant, along with his request to file an amended complaint, also

19  opposed by the defendant, in an order, filed on January 24, 2011, observing the previously granted

20  extension for the limited purpose of granting plaintiff an extension of time to serve responses to

21  requests for admission.  See id., at 4-5 & footnote 2.  As for the accompanying interrogatories,

22  defendant never brought a motion to compel further responses either within the discovery deadline

23  or after the request for admission responses had been served later, per the court's order, as

24  observed above.  To permit the defendant to invoke Rule 36(a)(3) in light of the convoluted

25  process that ensued here would be to allow the pro se plaintiff to essentially be sandbagged into

26  admissions he made at least some reasonable effort to deny.  Therefore, defendant's motion for

1   summary judgment on defendant's first  ground, that plaintiff failed to respond timely to

2   defendant's requests for admission and thus are deemed admitted pursuant to Fed. R. Civ. P.

3   36(a)(3), or, as alternatively framed, that plaintiff admits that defendant Stevens did not violate his

4   constitutional rights, should be denied.

5          Thus, the resolution of this case on its merits boils down to that part of <u>Toguchi v.

6   Young</u> quoted in the deliberate indifference standards:

7              Under this standard, the prison official must not only "be aware of
             facts from which the inference could be drawn that a substantial risk
8            of serious harm exists," *but that person "must also draw the
             inference.*" <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970,
9            128 L.Ed.2d 811 (1994). "If a [prison official] should have been
             aware of the risk, but was not, then the [official] has not violated the
10           Eighth Amendment, no matter how severe the risk." <u>Gibson</u>, 290
             F.3d at 1188 (citation omitted).FN4 [omitted] This "subjective
11           approach" focuses only "on what a defendant's mental attitude
             actually was." <u>Farmer</u>, 511 U.S. at 839, 114 S.Ct. 1970.

12

13  <u>Toguchi</u>, 391 F.3d at 1057 (emphasis added).

14         It is undisputed that plaintiff did not present himself to Stevens with all, or even

15  most, of the classic signs of respiratory distress.  Especially, he did not have color changes to his

16  facial areas, nor did he exhibit wheezing or an inability to talk.  The evidence in total does not

17  give rise to an inference that Stevens *knew of the severity of plaintiff's condition*, and consciously

18  did nothing to assist in alleviating it, i.e., send him to a doctor.  Surely, Stevens could have been

19  negligent from a "should have known" standard, even one of grossly negligent, but just as surely,

20  Stevens did not possess the subjective state of mind required for deliberate indifference.  While

21  the parties descriptions of plaintiff's condition on June 6 certainly are disputed facts, as might be

22  expected, and plaintiff turned out to ultimately be correct in his assessment, the ultimate fact,

23  derived from undisputed circumstantial evidence does not allow any other conclusion that

24  insufficient evidence exists from which a jury could legitimately find that Stevens had the

25  requisite subjective state of mind required for deliberate indifference.  She simply did not believe

26  plaintiff based on a lack of certain breathing difficulty indicia, and this disbelief is not deliberate

25

indifference.[9]  If Stevens could possibly be found Eighth Amendment liable on the state of the admissible evidence presented, it would be impossible to distinguish negligence from deliberate indifference.

Accordingly, IT IS RECOMMENDED that defendant's motion for summary judgment, filed on February 24, 2011 (docket # 37), be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 10, 2011

                                      /s/ Gregory G. Hollows
                                      UNITED STATES MAGISTRATE JUDGE


GGH:009
doug3412.msj

---

[9] The court also notes the relative lack of harm suffered by plaintiff.  No evidence exists which indicates that plaintiff suffered any actual injury from the one day delay in treatment. While respiratory distress can certainly induce anxiety, the lack of any demonstrable injury supports the conclusion that the signs of respiratory distress, i.e., the circumstantial evidence, were less than definitive.